83 So.2d 330

## L. M. WILLIAMS

v.

## NORTH ALABAMA EXPRESS, Inc.

### 7 Div. 259.

Supreme Court of Alabama.

Nov. 10, 1955.

McKay, Livingston & Worthy, Syla-
cauga, and C. W. McKay, Ashland, for ap-
pellant.

Thos. Reuben Bell, Sylacauga, and
Stringer & Montgomery, Talladega, for ap-
pellee.

PER CURIAM.

This is an appeal by appellant (plaintiff)
from a verdict for appellee (defendant) in
a suit on the common counts for an account
stated, an open account and for money
loaned and for money paid.

Prior to and on August 25, 1952, defend-
ant was a corporation solely owned by A. O.
Cleveland and his wife Lucile Cleveland.
On that day the Clevelands sold all the
stock in the corporation to the Gothard
brothers. Prior to that time, both before
and after the corporation was organized,
there had been a long series of transactions
between plaintiff, L. M. Williams, and
Cleveland. These consisted largely of many
loans by plaintiff to the Clevelands or paid
at their request, and some to the corpora-
tion.

After some conversations looking to a
sale of the capital stock of the corporation
to the Gothards by Cleveland, on July 17,
1952, there was a conference in the office
of K. L. Williams (plaintiff's son), at
Sylacauga, for the purpose of stating the
amount due plaintiff by the corporation, in-
cluding the personal loans to Cleveland,—
the amount due being represented by notes,
mortgages, checks, etc. At this meeting
there were present the plaintiff, his son,
both the Clevelands and Mr. Pow who was
an accountant then, as well as previously,
in the employ of the corporation. Mr.
Cleveland, plaintiff Williams and his son
testified that after an all day conference

and study of the books and documents, they reached an agreement that the corporation was indebted to plaintiff in the sum of $32,391.45, agreed to by Mr. Cleveland and his wife who owned all the stock of the corporation. Mr. Pow testified that they mentioned some figure at the time, but did not agree on $32,391.45, nor $27,000, or any other amount. His testimony conflicted with that of the others present that they agreed upon the figure of $32,391.45. The work sheets used on that occasion were not introduced in evidence, nor is it shown what figures make up that total.

On said August 25, 1952, about 2:30 p. m., at a drug store in Sylacauga, the Gothards and Cleveland had an agreement by which the Gothards were to purchase from Cleveland all the stock of the defendant corporation. Of course that alone did not affect any indebtedness owing by the corporation to plaintiff. But on that occasion plaintiff was present and had a transaction about his claim against the corporation. Plaintiff testified that the Gothards agreed to pay him $10,000 in money the next day if he completed the purchase from Cleveland, and to pay $100 a week until Christmas, and thereafter to pay $1,000 a month until the $32,391.45 was paid. Plaintiff further testified that thereupon he marked "paid" and surrendered to Gothard some mortgages and some other instruments executed by Cleveland to him to be used in preparing papers by Gothard for the corporation to execute to him, together with a separate release of any debt contracted by Cleveland for the corporation. Both the Gothards testified that during the meeting at the drug store plaintiff produced an adding machine tape of a set of figures showing an indebtedness to him by the corporation of $9,503.-86, and stated that was all the corporation owed him. The original is before this Court on this appeal. They further testified that George Gothard wrote a check for the amount on the First National Bank of Sylacauga and gave it to plaintiff who then marked the documents "paid" and gave them and the receipt to George Gothard. The Gothards also testified that George Gothard gave to Cleveland a check for $2,000, which he paid Cleveland in cash and took up the

check on the next day in Birmingham. The amount was for the purchase of the stock. (Payment of that amount was admitted by Cleveland.) The Gothards further testified that they saw plaintiff again the same day at a filling station which the Gothards owned but sold for cash on that day: that plaintiff wanted to know if he could get the cash for his check, and was told he could get the cash the next morning. So the following morning at about 6:30 they met at the filling station where George Gothard had in his safe the cash from the sale of the filling station and other sources, and gave to plaintiff the full amount of the check. Plaintiff then returned the check to Gothard and it was destroyed. All of this was denied by plaintiff.

█ The jury could have found from the evidence that plaintiff knew at the time of that conversation at the drug store on August 25th that Gothard intended to buy all the stock of the corporation; that it was important for him to know what the corporation owed plaintiff; and that the information given him would be influential in causing Gothard to act in that respect. Gothard had no other means of knowing the amount of the indebtedness. If plaintiff, under those circumstances, told Gothard that the total was $9,503.86, Gothard had the right to act on that information given for that purpose, and plaintiff would be estopped to deny it as to Gothard; and if that amount was paid plaintiff, as Gothard testified, the debt was discharged. Graves & Gross v. Leach, 192 Ala. 164, 68 So. 297.

█ Although the estoppel operated for the direct benefit of Gothard personally, it also operated for the benefit of the corporation which was to become completely and wholly owned by Gothard. He was acting for the benefit of the corporation in paying plaintiff, if he did in fact. At the moment he was in the act of acquiring all the capital stock. It was all a continuous transaction. The payment of the debt of the corporation enured to its benefit both as a payment and as an estoppel to claim more. Stockholders owning all the shares of stock of a corporation are the equitable

owners of its assets, Autauga Co-Operative Leasing Ass'n v. Ward, 250 Ala. 229, 33 So.2d 904; Boozer v. Blake, 245 Ala. 389 (14), 17 So.2d 152; First Nat. Bank of Gadsden v. Winchester, 119 Ala. 168, 24 So. 351,—and, of course, they are interested in its liabilities.

■ The acts and contracts of persons owning all the stock of a corporation may be considered as the acts and contracts of the corporation, where the effect is the same as though the corporation had acted as such. Birmingham Realty Co. v. Crossett, 210 Ala. 650, 654, 98 So. 895 (quoting from Cook on Corporations).

There are ninety-three assignments of error. The first ten do not relate to a ruling of the court. Appellant's brief sets out twenty propositions of law. They do not refer to any assignments specially as they should under old Supreme Court Rule 10, Code 1940, Tit. 7 Appendix (in effect when this case was submitted). But the argument in brief shows that they all, except the first eleven and numbers 38 and 93, are intended to raise the question of the admissibility of evidence tending to show the true amount of the debt owing by defendant to plaintiff, different from the amount alleged to have been stated on July 17, 1952, which it is claimed was binding on defendant. The claim by plaintiff is that the account was stated between the parties on July 17, 1952, when Cleveland owned all the stock of the corporation and that it is binding after Gothard bought the stock on August 25, 1952, except for fraud, mistake or omission in reaching the figure agreed on. And, therefore, evidence of the true amount of the debt owing plaintiff by the corporation is not admissible.

■ That effect of a stated account is not controverted but by a subsequent transaction a new agreement on a sufficient consideration may be made, which would abrogate the former. The Gothards claim that this occurred on August 25, 1952 at the drug store in Sylacauga.

But it was open to the jury to find from the evidence that the account was not stated on July 17, 1952, nor on August 25, 1952, and that the amount of it remained open. On that theory the counts based on an open account would make such proof competent.

Assignment No. 93 is that the court "erred in denying plaintiff's motion for a mistrial made by plaintiff upon the statement of juryman Hardy who said he agreed to a majority verdict with the other jurymen". The record shows the following in that connection:

"Mr. McKay: I would like the opportunity to poll the jury, Judge.

"The Court: All right.

"Mr. McKay: (Interrupting) Mr. Hardy, did you, as one of the jurors just agree to this verdict to go along with the majority verdict?

"Mr. Hardy: Yes, sir.

"Mr. McKay: We would like the record to show that Mr. Hardy said he agreed to a majority verdict, and we move for a mistrial.

"The Court: Mr. Hardy, did you mean by your answer that your answer was the same verdict as the others?

"Mr. Hardy: I went with the crowd.

"The Court: The verdict was what you yourself thought the verdict should be?

"Mr. Hardy: Yes, sir.

"Mr. McKay: Mr. Hardy, before you took the last ballot, did you agree with the group that regardless of how the vote went, whether for the plaintiff or the defendant, the side with the most votes would get your verdict?

"The Court: Don't answer that question.

"The Court: Mr. Hardy, is it your independent best judgment under the evidence in this case and under the law as I gave it to you, that you arrived at this verdict from your independent thoughts and consideration thereof?

"The Court: You nodded that you did?

"Mr. Hardy: I did.

"(The Court polled jury by asking each of them, 'Is this your verdict?' and received an affirmative reply from each juror.)

"Mr. McKay: Mr. Campbell, was that your verdict or did you agree to a majority vote?

"Mr. Campbell: My verdict.

"The Court: I have already asked them all that.

"Mr. McKay: Your Honor, we move for a mistrial.

"The Court: Overruled.

"Mr. McKay: We except.

"Mr. McKay: We would like to ask each man if he agreed to a majority vote.

"The Court: I want to poll the jury again by asking the question 'Is this your verdict' in the sense that it is your independent judgment, based on the evidence in the case and the law as I gave it to you and not in the sense that it is your verdict as a result of any agreement to a majority rule?

"(Whereupon, the Judge polled the jury by asking question of each member 'Is this your verdict?' and receiving an affirmative response from each.)"

 Assignment of error No. 11 also is based on that ruling.

Aside from the fact that the appropriate motion should have been that the court shall not receive the verdict, but that the jury should return to the jury room for further consideration, there was no error in receiving the verdict.

To poll the jury is a statutory right, section 101, Title 30, Code. Each juror was asked the question required by the statute—if it was his verdict. No one of them answered in the negative. Mr. Hardy, upon inquiry, stated that it was his independent verdict. He had answered that he had agreed to go along with the majority. But he repeated that he agreed with the verdict and that it was his. When he thus answers "the motive which influenced, or the reasons that governed the juror, cannot be inquired into". Winslow v. State, 76 Ala. 42; Rudder v. State, 12 Ala.App. 72, 67 So. 738; 89 C.J.S., Trial, § 490, p. 152, notes 1 to 9.

The motion for a new trial was denied by the court. Assignment No. 38. There was substantial evidence supporting the respective contentions of the parties. Each was corroborated by other evidence. We are not the judges of such questions. The case was well and carefully tried and the verdict and judgment should not be disturbed, but should be affirmed.

The foregoing opinion was prepared by FOSTER, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.