BEATTY, Justice.
Tomaras appeals from a jury verdict in this will contest. We affirm.
The decedent, Christ Anargyros, a member of the Malbis Plantation community in Baldwin County, died on November 12, 1974. Two wills executed by him were offered for probate:
(1) The first will was dated August 21, 1970 and was prepared by a Mobile lawyer. This will was witnessed by the lawyer and by a Mr. Mathews, a resident of Malbis Plantation. It named C. D. Papadeas, the testator’s “friend,” as executor. Papadeas is a stockholder in and member of the Board of Directors of Malbis Plantation, Inc. Under the terms of this will certain real property located in Greece was devised to the testator’s two sisters. The residue and remainder of the testator’s estate, the bulk of which consisted of shares of stock in Malbis Plantation, Inc., was left to that corporation.
(2) The second will, dated May 23, 1972, was prepared by a Foley lawyer and named as executor and sole beneficiary Nicholas Tomaras, the testator’s nephew. This will was witnessed by the lawyer and one Er-molaos Moustakas, a friend of Tomaras who lived in Chicago but who was visiting To-maras at the time. After its execution this will was retained in Tomaras’ possession.
Following the death of Christ Anargyros, both wills were offered for probate, with Papadeas and Tomaras contesting the will offered by the other. The contests were consolidated for trial in the Circuit Court of Baldwin County, and a jury found in favor of the 1970 will. Judgment was rendered in that court directing the probate court to admit the 1970 will to probate. Motions for judgment N.O.V. and for a new trial were denied and this appeal ensued.
There are two issues presented:
(1) Whether Papadeas, as a stockholder in Malbis Plantation, Inc., had standing to contest the later 1972 will, and
(2) Whether the deposition of Mousta-kas taken in Athens, Greece was properly admitted into evidence at trial.
We answer both questions affirmatively.
With respect to the standing issue, § 43-1-70, Code of Ala. 1975 states that:
*430 A will, before the probate thereof, may be contested by any person interested therein, .
The statutory phrase “any person interested therein” has been construed recently in Pruitt v. Pruitt, 343 So.2d 495 (Ala.1976):
Under this statute, if a person has a direct legal or equitable interest in the defendant’s estate, in privity with the decedent, “whether as heir, purchaser, or beneficiary under another will, which would be destroyed or injuriously affected by the establishment of the contested will,” he has standing to contest the will, (citations omitted)
It has also been held that the phrase “any person interested therein” is not limited to persons named as beneficiaries in the will, but includes any person with a direct interest in the estate disposed of by the will, i. e., the interest referred to is not in the will itself but in its operation. Braasch v. Worthington, 191 Ala. 210, 67 So. 1003 (1915).
The appellant argues that the appellee, Papadeas, as a stockholder of the beneficiary corporation, has only an indirect interest in the operation of the will; that the Papadeas contest, if successful, would vest testator’s property in Malbis Plantation, Inc., not in Papadeas as a stockholder, and thus Papadeas has no interest in the operation of the Tomaras will to give him standing to contest it. We hold, however, that appellee-Papadeas did have standing to contest the 1972 will because he had a direct equitable interest in the operation of the 1970 will as a beneficiary, which interest would be injured by the probate of the 1972 will.
In Alabama it is settled that the shareholders of a corporation are the equitable owners of its assets. Williams v. North Alabama Express, 263 Ala. 581, 83 So.2d 330 (1955). Indeed, the corporate asset of good will is equitably owned by the shareholders in the proportion that their shares bear to the total outstanding shares in the corporation. First Alabama Bancshares v. McGahey, 355 So.2d 681 (Ala.1977). The logic of this position finds support in a factually similar case, Diebold v. Commissioner of Internal Revenue, 194 F.2d 266 (3rd Cir., 1952). There a one-eighth owner of a closely held corporation devised his shares of stock to the corporation itself. The Court of Appeals viewed his action as a gift to the remaining stockholders in an amount in proportion to each stockholder’s relative interest. That Court reasoned that:
[b]eyond its status as a paper of monetary value, the share of stock represents rights of corporate ownership and control. Indeed, where corporate structure is not complicated by various classes of stock and shares are not freely sold as commodities, issued capital stock is significant primarily as the embodiment of proportional interests of ownership and control of the corporate enterprise by those to whom the stock belongs.
So it follows in this case that the gift expressed in the 1970 will of the stock and other property to Malbis Plantation, Inc. increased the percentage ownership of each shareholder thereof and increased the value of each shareholder’s ownership in the corporation in the proportion that his shares bore to the total outstanding shares. And because the 1970 testamentary gift, when effective, would vest in each shareholder as the equitable owner of the corporate assets, the appellee-Papadeas, as such a stockholder, had a direct equitable interest in the estate itself to come within the standing requirements set forth in Pruitt, supra, and in Braasch, supra.
Ermolaos Moustakas, a witness to the 1972 will, was deposed on two occasions. His first deposition was taken by Tomaras’ lawyer in Boston, Massachusetts on July 30, 1975. In that deposition Moustakas testified to the apparently valid execution of the 1972, or later, will. In December of 1976 Moustakas moved to Athens, Greece and sometime later contacted an attorney, a Mr. Scourtes, who also lived in' Athens and whom Moustakas had met at Malbis Plantation. Moustakas told Scourtes that his deposition taken in Boston was “all lies.” His recantation led to the taking of the Athens’ *431 deposition the admissibility of which is now in issue.
This deposition was taken on March 24, 1977 by Papadeas. Also present in Athens for the deposition proceeding were Tomar-as, his brother-in-law, Nick Tsatos, Mousta-kas’ former employer in Montreal, and Peter Tsatos, who, according to Moustakas, was his best friend. In the Athens’ deposition Moustakas testified to a substantially different story than that contained in his Boston rendition. In the Boston deposition, Moustakas had testified that in May, 1972 the testator was alert and in good health, had expressed dissatisfaction with the management of Malbis, and wanted to leave all his assets to his nephew, Tomaras so that some “new blood” would be injected in the Malbis Plantation. However, in his Athens’ deposition Moustakas testified that all of the facts contained in the Boston deposition were false, and that in actuality the testator was old, sick and not alert. He also testified in Athens that neither he nor the testator knew that they were signing a will when the 1972 will was executed.
The appellant-Tomaras argues that it was reversible error for the trial judge to deny his motion to suppress the Athens’ deposition, and he lists his objections to it:
1. Incomplete;
2. Inaccurate;
3. In parts of the testimony it is impossible to tell which side is interrogating the witness;
4. A tape recording of questions and answers was played to the witness before Tomaras’ counsel was allowed to cross-examine;
5. The witness’ answers were paraphrased to the court reporter by Papadeas’ counsel whenever the reporter had difficulty in understanding the witness.
The appellant’s arguments, essentially, are that the deposition does not accurately reflect what was testified to in Athens, and that since all of Moustakas’ Athens’ testimony was not in court, then none of it should have been presented to the jury on the trial of this contest, and he cites Rule 32(a)(4), ACRP:
If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which ought in fairness be considered with the part introduced, and any party may introduce any other parts.
The appellee-Papadeas maintains that the contentions of Tomaras are not supported either by the record or by the deposition itself; to the contrary, he asserts that the deposition as reported is complete and accurate in all respects.
The record shows that the parties entered into a written stipulation pursuant to Rule 29, ARCP to the effect that the deposition might be taken before any person at any time or place upon any notice and in any manner, and when so taken might be used as other depositions taken in accord with Alabama Rules of Civil Procedure. This stipulation was approved by the circuit judge, See Rule 28(a). And in Athens, before his deposition began, Moustakas also stipulated that “all other requirements and technicalities of every sort which would be a prerequisite to the use of said deposition, except the filing of said deposition [are waived]; it being the intent of the parties hereto that said deposition may be used in evidence as though all requirements of said applicable sections of the Alabama Code had been complied with.” We note that in addition to this waiver, Tomaras’ objections to the admissibility of the deposition as evidence did not take the form of specific .objections to questions and answers at the time the deposition was introduced at the trial in Mobile. See Rule 32(b) and (d), ARCP. And on this appeal Tomaras makes the same argument against the admissibility of the deposition as evidence as he did against the trial court’s decision to deny his motion to suppress the deposition as a whole. The record does not support these objections.
(1) The objection of incompleteness concerned a series of questions on whether or not Moustakas, or members of his family, solicited a $30,000.00 bribe from Tomaras *432 the night before the Athens’ deposition was taken, in exchange for either Moustakas’ disappearance of his continued support of the 1972 will. But the record contains thirty-eight pages which deal with this deposition and which concern these questions, with much of the examination having been propounded by Tomaras’ attorney. Moreover, the trial court itself noted that the deposition was complete concerning those issues, and overruled the same objection made presently. The state of the record supports his ruling.
(2) With respect to the presence of inaccuracies, Tomaras cites us to none.
(3) Contrary to the contention of the appellant, a reading of the Athens’ deposition reveals which side was asking the questions. The clarity of the respective positions, moreover, is enhanced by the index to the record which gives the appropriate pages for direct, cross, redirect, recross, further direct, and further cross-examination.
(4) We know of nothing improper in the use of a tape recorder to assist in the taking of a deposition, and this record does not suggest any impropriety therein. For aught that appears from the record the use of the tape recorder complained of was merely to assure that the deponent’s testimony was being accurately recorded. Cf. State ex rel. Baxley v. Strawbridge, 52 Ala. App. 685, 296 So.2d 779 (1974). And in that connection.
(5) The objection that Papadeas’ attorney was paraphrasing the deponent’s answers refers to that portion which occurred only before the tape recorder became available. Papadeas’ attorney explained that some paraphrasing was done to assist the reporter in recording Moustakas’ answers. Appellant’s counsel concedes that the paraphrasing was not extensive, and since he made no objection on this ground when the deposition was read he must not have considered it significant. The record discloses that the “paraphrasing” consisted of repeating the answers of the deponent. We fail to see that any prejudice could have resulted to Tomaras from that procedure. In any case, if there was error from such paraphrasing it was waived. Swindall v. Speigner, 283 Ala. 84, 214 So.2d 436 (1968).
Our review has convinced us that upon the issues presented for review the trial court’s rulings were correct. Accordingly, the judgment must be, and is, affirmed.
AFFIRMED.
TORBERT, C. J., and MADDOX, JONES and SHORES, JJ., concur.