Appeal by American Cast Iron Pipe Company (ACIPCo), plaintiff, from summary judgment rendered in favor of Commerce Industry Insurance Company (C I) in ACIPCo's action for damages based upon an alleged breach of a contract of insurance. We reverse and remand.
The case was submitted to the trial court on the parties' motions for summary judgment, stipulation of fact, briefs, and arguments. The stipulation was as follows:
"STIPULATION OF FACT
 "Come now the parties and stipulate the following may be taken and accepted by the Court as established fact:
 "1. Plaintiff, American Cast Iron Pipe Company (`ACIPCo'), is a Georgia corporation with its principal place of business in Jefferson County, Alabama. ACIPCo is a manufacturer of ductile iron and steel pipe used in water, sewer, and oil and natural gas systems.
 "2. On August 4, 1980, ACIPCo was served with a Summons and Complaint filed by Michael T. O'Brien, an employee of American Valve Hydrant Manufacturing Company (`American Valve'). The Complaint claims damages for personal injuries received on February 22, 1980, while O'Brien was working on the premises of American Valve. Said suit was filed in the United States District Court for the Eastern District of Texas, Beaumont Division, Civil Action Number B-80-517-C. . . .
 "3. ACIPCo owns 100% of the stock of American Valve. American Valve is a separate corporation with its own Board of Directors and officers.
 "4. The plaintiff's injuries occurred as a result of coming into contact with a conveyor belt system designed by plaintiff and installed on the premises of American Valve.
 "5. Defendant, Commerce Industry Insurance Company, is a corporation which wrote a policy of insurance, policy number GLA 650 07 96, in favor of the plaintiff. . . .
 "6. At all times pertinent to the underlying claim made the basis of this action, Michael T. O'Brien was an employee of American Valve.
 "7. The claim of Michael T. O'Brien was settled for Three Hundred Fifty Thousand Dollars ($350,000.00).
 "8. If the defendant's policy is applicable to the O'Brien claim, it provides for an aggregate limit of insurance of Fifty Thousand Dollars ($50,000.00), less a Five Thousand Dollar ($5,000.00) deductible per occurrence.
 "9. On the occasion of the O'Brien accident, the work to be performed on the conveyor system had been completed by ACIPCo and the system was being used by American Valve."
The policy referred to in the stipulation is a general liability policy under which C I obligated itself to defend ACIPCo against all general liability claims, subject to a single limit of $50,000.00 and to a deductible amount of $5,000.00 for each occurrence. The failure to pay this amount was the gravamen of ACIPCo's complaint, which alleged causes of action in negligence, breach of contract, and bad faith refusal to pay an insurance claim.
According to the policy, the "named insured" is specifically described as:
 "American Cast Iron Pipe Company and any subsidiary associated or affiliated company as are now or hereafter constituted in which the Named Insured owns or may own directly or indirectly more than 50% of the combined voting power."
The policy provided as follows:
 "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
"A. bodily injury or
"B. property damage
 "to which this insurance applies caused by an occurrence, and the company shall have the right and duty to defend any *Page 894 
suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. . . ."
The policy defines "occurrence" as: "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
The policy also contained an exclusion of coverage for bodily injury or property damage arising from "completed operations hazard and products hazard." "Completed operations hazard" was defined in the policy thusly:
 "`completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. `Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:
 "(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,
 "(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or
 "(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project."
In considering the parties' summary judgment motions, the trial court noted that the parties generally agreed upon three issues to be decided:
"ISSUE 1.
 "Was O'Brien an employee of ACIPCo or did his injury arise out of and in the course of an employment by ACIPCo?
. . .
"ISSUE 2.
 ". . . Whether the claim of Michael T. O'Brien is excluded from coverage under the products liability exclusion.
"ISSUE 3.
 ". . . Whether the claim by Michael T. O'Brien is excluded under the completed operations hazard exclusion."
After consideration, the trial court decided Issue 1 and Issue 2 in favor of ACIPCo, and C I did not appeal from those rulings. Regarding Issue 3, the trial court held:
 "As to Issue 3, it is the opinion of the Court that the design and installation of the conveyor system and the materials, parts or equipment furnished in connection therewith does fall within the definition of `completed operations hazard' as such term is defined in the insurance policy and that, therefore, the completed operation hazard portion of the Completed Operations Hazard and Products Hazard Exclusion does exclude coverage for the claim made by O'Brien against the Plaintiff."
The issue before this Court, then, is whether or not the trial court was correct in deciding that the "completed operations hazard" exclusion was applicable under these facts to support the denial of coverage by C I. Put in another way, did O'Brien's bodily injury claim arising out of the conveyor located on American Valve's premises amount to a "completed operations hazard" under the policy?
"Completed operations" is a term referring to the liability of a business entity, generally a contractor, which arises after he has completed his work and after the subject matter has been accepted by a third party. Annot. 58 A.L.R.2d 12 at 19 (1958). Although there are a number of decisions in the literature applying the "completed *Page 895 
operations hazard," see, for example, Annot. 58 A.L.R.2d 12, and Employers Ins. Co. of Ala. v. Rives, 38 Ala. App. 411,87 So.2d 646 (1953), rev'd, 264 Ala. 310, 87 So.2d 653 (1955), onremand, 38 Ala. App. 411, 87 So.2d 646 (1956), cert. denied,264 Ala. 696, 87 So.2d 658 (1956), none has been cited to us, nor have we found a case, containing these particular facts. Defendant C I makes much of the fact that O'Brien's injuries occurred upon American Valve's premises. C I describes American Valve as "a separate and distinct corporation" which owned the premises on which the injuries to O'Brien occurred. Thus, C I insists that the injury occurred "away from premises owned by . . . the named insured." C I discounts the effect of the "named insured" as also including American Valve, pointing to a severability clause contained in the policy:
 "The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability;"
C I cites us to our decision in United States Fire Ins. Co.v. McCormick, 286 Ala. 531, 243 So.2d 367 (1970), in which this Court discussed the effect of such a severability clause in a comprehensive general liability policy. That case dealt with a factual situation in which the policy of insurance named as "insured" a corporation and an individual who was president of the corporation. The policy contained an exclusion from any "obligation for which the insured . . . may be held liable under any workmen's compensation . . . law." The plaintiff in that case sued the president of the corporation, as provided by a statute which allowed the recovery of workmen's compensation and also an action against "any party other than the employer." The insurance company defended on the ground that the suit against the president of the company in reality was a suit against the employer. This Court rejected that position as not conforming to the intentions of the contracting parties.
The insurance company also contended that the policy's severability clause excluded coverage when the injured party was an employee of any insured, even though he might not have been an employee of the person committing the tort. This Court rejected that argument by adopting the reasoning of cases from other jurisdictions which held that the effect of the severability clause[1] was to broaden or extend coverage rather than to limit it:
 "`The effect of the severability of interest clause is to make it certain that, when a claim is asserted against one who is an insured under the policy, then that person becomes "the insured" for the purpose of determining the insuror's obligations with respect to that claim. The exclusion as to employees of the insured is thus limited and confined to the employees of the employer against whom the claim is asserted. * * *
"`* * *
 "`* * * The opposite side of the coin is the result which we reach; that is, where the claimant is not the employee of the additional insured against whom the claim is made, then there is coverage.'" 286 Ala. at 540, 243 So.2d at 375.
With deference to defendant's argument, we point out thatMcCormick dealt with the applicability of the severability clause to a co-employee liability case arising under workmen's compensation law and did not pertain to the particular problem presented here. The question here deals with the effect of that clause in an insurance policy purchased by a corporation, a named insured, which wholly owns another named insured. It is stipulated that ACIPCo owns 100% of the stock of American Valve. For the purposes of applying the severability clause in C I's policy, what did the parties intend? If the bodily injury occurred at American Valve's premises, were these premises "away from the premises owned *Page 896 
by . . . the named insured," ACIPCo? Or, were American Valve's premises also ACIPCo's premises, so that the bodily injury occurred on ACIPCo's premises, with the result that the "completed operations hazard" exclusion did not apply?
By its language, the severability clause itself does not modify the term "named insured," nor does it limit the definition of "completed operations hazard." Therefore, we must use other means to ascertain ACIPCo's status vis-a-vis the additional insured, American Valve.
Admittedly, American Valve is a separate corporate entity. Nevertheless, ACIPCo owns 100% of the stock of American Valve and thus, as sole stockholder, has the ultimate voting authority and control over American Valve. In Alabama, shareholders are the equitable owners of corporate assets, including real property, to the extent of their interest, and thus exercise ultimate control over the corporation through their voting power to elect directors. Williams v. NorthAlabama Express, 263 Ala. 581, 83 So.2d 330 (1955). As was more pointedly stated in Diebold v. Commissioner of InternalRevenue, 194 F.2d 266, 268 (3d Cir. 1952):
 "[B]eyond its status as a paper of monetary value, the share of stock represents rights of corporate ownership and control. Indeed, where corporate structure is not complicated by various classes of stock and shares are not freely sold as commodities, issued capital stock is significant primarily as the embodiment of proportional interests of ownership and control of the corporate enterprise by those to whom the stock belongs."
See also Code of 1975, § 10-2A-185 (on dissolution).
Accordingly, we cannot conclude that ACIPCo's purchase of this policy and the naming of its subsidiary company as an insured effected a severance of insured interests. The "premises" upon which O'Brien's accident occurred were the "premises" of ACIPCo, and so the exclusion for "completed operations hazard" does not apply.
Thus, the trial court was in error in its finding to the contrary. Accordingly, the judgment predicated upon that finding must be, and it is, reversed, and this cause is remanded for further proceedings consistent with this opinion. It is so ordered.
REVERSED AND REMANDED.
FAULKNER, ALMON and HOUSTON, JJ., concur.
TORBERT, C.J., concurs in the result.
[1] ". . . The term `the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability." McCormick, 286 Ala. at 538, 243 So.2d at 373.