11 F.3d 707
 ST. KATHERINE INSURANCE COMPANY LIMITED, 'Winterthur' Swiss
Insurance Company Limited, Bermuda Fire & Marine
Insurance Company Limited, et al.,
Plaintiffs-Appellants,
v.
INSURANCE COMPANY OF NORTH AMERICA, INCORPORATED, a
Pennsylvania corporation, Monsanto Company, a
Delaware corporation, and Leonard
Construction Company, a
Delaware
corporation,
Defendants-Appellees.
 No. 92-3812.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 8, 1993.
Decided Dec. 8, 1993.
Rehearing Denied Jan. 28, 1994.
 
 Richard R. Ryan (argued), Thomas W. Engelhardt, Patrick M. Graber, M. Bart Rinn, Douglas A. Allen, McCullough, Campell & Lane, Chicago, IL, for plaintiffs-appellants.
 William E. Hoversen, Jr., Modesto, Reynolds & McDermott, John H. Mathias (argued), Terri L. Mascherin, Robert R. Stauffer, Edward J. Sebold, Jenner & Block, Chicago, IL, for defendants-appellees.
 Before CUDAHY and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 CUDAHY, Circuit Judge.
 
 
 1
 This case involves the classification of a loss under an insurance agreement. On February 12, 1983, Richard Care, a Monsanto employee, fell into a sulphur pit on Monsanto property in Massachusetts. The pit was built in the late 1960's by Leonard Construction Co. (Leonard), a wholly-owned subsidiary of Monsanto. Care and his family sued Leonard and Monsanto and the case was ultimately settled, with $1.2 million of the loss apportioned to Leonard (the Care loss).
 
 
 2
 Leonard is insured pursuant to a general liability insurance policy between Monsanto and Insurance Company of North America (INA). The policy indemnifies Monsanto and its subsidiaries (including Leonard) for two kinds of claims: general liability claims, subject simply to a $2 million per occurrence limit, and completed operations hazard claims, which are subject to a $2 million per occurrence limit and a $2 million annual aggregate limit. Leonard is indemnified against losses exceeding the limits found in the INA policy through umbrella insurance agreements similarly issued to Monsanto and its subsidiaries. These umbrella agreements indemnify Monsanto and its subsidiaries for losses exceeding the $2 million occurrence limit and, more importantly for our purposes, indemnify losses once the $2 million annual limit on completed operations hazard claims has been exhausted.
 
 
 3
 The present dispute arose from the classification of the Care loss as attributable to a completed operations hazard. The policy defines "completed operations hazard" to include
 
 
 4
 bodily injury and property damage arising out of operations ... but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from the premises owned by or rented to the named insured.
 
 
 5
 INA Policy Section IV.B. "Named insured," moreover, is defined as "the organization named in Item 1 of the declarations, [i.e., Monsanto] and subsidiaries of such organization (including subsidiaries thereof)...." Id. at Section IV.I.
 
 
 6
 The umbrella insurers brought this suit in diversity for a declaratory judgment, arguing that the Care loss was a general liability loss under the INA policy, and not a completed operations hazard loss. Plaintiffs argue that the "named insured" under the policy is Monsanto, Leonard and other Monsanto subsidiaries, collectively, and that each individually is not a "named insured." Plaintiffs thus contend that the Care loss cannot be categorized as a completed operations hazard loss because the accident occurred on the property of Monsanto, and hence on the premises of the "named insured."
 
 
 7
 The classification of the claim is crucial: if the loss is classified as a "general liability" loss, then the $1.2 million does not exhaust the $2 million occurrence limit under the INA policy and the plaintiffs are not liable for any part of the loss; if the loss is classified as a "completed operations hazard," however, the $1.2 million, added to $903,000 in earlier losses alleged by INA, would exhaust the $2 million aggregate limit and leave an excess of $103,000 for which the umbrella insurers would be responsible.
 
 
 8
 On cross motions for summary judgment, the district court held that the claim was properly classified as a completed operations hazard loss. The court noted that the plaintiffs' interpretation of the policy would be correct if the "named insured" was a single, non-severable entity under the policy. The court held, however, that another provision of the policy works to sever Monsanto from Leonard for the purposes of the policy. Section IV.G of the INA policy states that
 
 
 9
 "Insured" means any person or organization qualifying as an insured in the "Persons Insured" provision of the policy. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.
 
 
 10
 The court found that the "named insured" is a subset of the "insured" and that the severability clause should be interpreted to provide separate coverage to all insureds--named and unnamed. The court also concluded that classifying the Care loss as a completed operations hazard would effectuate the purpose of this coverage, which is to cover losses sustained after the insured has completed its operations and no longer has control of the premises. Walbrook Ins. Co., et al. v. Insurance Co. of N. Am., et al., No. 91 C 3823, 1992 WL 201914, 1992 U.S. Dist. LEXIS 12086 (N.D.Ill. Aug. 13, 1992).
 
 
 11
 The defendants subsequently moved for final judgment on the $103,000. The plaintiffs countered that the defendants had not proved the existence of the purported $903,000 in pre-existing losses necessary to put the $1.2 million over the exhaustion limit. The court held, however, that the plaintiffs' statement that the categorization of the claim was the only issue in the litigation amounted to a waiver, and that they could not subsequently challenge the existence of the earlier losses. Plaintiffs appeal both of these issues.
 
 
 12
 With respect to the classification of the Care loss, we find the district court's reasoning persuasive.[1] The purpose of severability clauses is to treat each entity covered under the policy as if each were insured separately. United States Fidelity & Guaranty Co. v. Globe Indemnity Co., 60 Ill.2d 295, 327 N.E.2d 321 (1975). Although the severability clause appears in the definition of "insured" and not in the definition of "named insured," we do not think that the location of the clause limits its function and effect. See American Nat'l Fire Ins. Co. v. Estate of Fournelle, 472 N.W.2d 292 (Minn.1991). A "named insured" is simply a subset of the class of "insureds" to which the severability clause applies.[2] And as Appleman notes:
 
 
 13
 [E]xclusionary language of a policy properly should be restricted in its application to each insured party specifically and not collectively against all parties insured.
 
 
 14
 Thus an additional although unnamed insured would be treated as if he had a separable policy in determining the applicability of the policy exclusions. And particularly where the policy contains a severability of interests clause, the exclusions are to be applied only against the insured for whom coverage is sought.
 
 
 15
 13 John Alan Appleman, Insurance Law and Practice Sec. 7486 at 633 (rev. ed. 1976) (footnotes omitted). Consequently, the plaintiffs' claim that there is only one named insured encompassing Monsanto and all of its subsidiaries is inconsistent with the severability clause. The exception of completed operations coverage for injuries occurring on the premises of the named insured applies only against Leonard, for which coverage was sought. Because the injury did not occur on Leonard's premises, the loss falls squarely within the policy's definition of a completed operations hazard.
 
 
 16
 Moreover, the purpose of completed operations coverage is to indemnify just such loses. "Completed operations" refers to the liability of a business entity, generally a contractor, arising from work completed and accepted by a third party. See Allan E. Korpela, Construction and Application of Clause Excluding From Coverage of Liability Policy "Completed Operations Hazards," 58 A.L.R.3d 12, 19 (1974). " 'The risk intended to be insured against is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable.' " Diamond State Ins. Co. v. Chester-Jensen Co., 243 Ill.App.3d 471, 183 Ill.Dec. 435, 443, 611 N.E.2d 1083, 1091 (1993) (quoting Henderson, Insurance Protection for Products Liability and Completed Operations--What Every Lawyer Should Know, 50 Neb.L.Rev. 415, 441 (1971)). A general liability policy generally does not cover such losses:
 
 
 17
 The comprehensive general liability policy provides protection to an insured, generally, a contractor, under premises-operations coverage, who performs work at various locations but once such operation has been completed, as defined, it is excluded under the policy and if the insured requires liability protection from losses that may occur from its work product it then must carry completed operations coverage or else it is without protection.
 
 
 18
 7A Appleman, supra Sec. 4508.03 at 388-90. In short, the completed operations provision enhances an insured's coverage by covering claims stemming from defective workmanship on projects no longer within the insured's control.
 
 
 19
 In the present case, there is no question that the sulphur pit was completed and that Leonard relinquished all control of the operation upon completion of the pit in the late 1960's. The loss has all the indicia of a completed operations hazard.
 
 
 20
 The plaintiffs rely on American Cast Iron Pipe Co. v. Commerce & Industry Insurance Co., 481 So.2d 892 (Ala.1985). In that case, the Alabama Supreme Court held that injury to an employee of a subsidiary occurring on the premises of the subsidiary as a result of a defectively designed conveyor belt installed by the parent was not excluded as a completed operations hazard because it happened on the premises of the "named insured." The court held that, even though there was a severability clause in the policy, the premises of the subsidiary were considered the premises of the parent because, under Alabama law, the parent was the owner of the subsidiary's premises.
 
 
 21
 We think that American Cast Iron is distinguishable. American Cast Iron involved a situation in which the parent's defective product was located on the premises of the subsidiary, thus plausibly leading to the conclusion that the accident occurred on premises "owned by" the parent. As the district court noted in distinguishing American Cast Iron, however, the plaintiffs here have not argued that Leonard (the subsidiary) controls or owns the premises of Monsanto (its parent).
 
 
 22
 Moreover, in American Cast Iron, the Alabama Supreme Court noted that Alabama law treats shareholders as the equitable owners of corporate assets, including real estate. The court then, in effect, completely disregarded the corporate form of the entities and held that the premises of the subsidiary were the premises of the parent. We do not believe that an entity's corporate existence can so casually be disregarded. "A corporation is an entity separate and distinct from its shareholders and from other corporations with which it may be connected." Beatrice Foods Co. v. Illinois Ins. Guar. Fund, 122 Ill.App.3d 172, 77 Ill.Dec. 604, 606, 460 N.E.2d 908, 910 (1984). Unless there is evidence to suggest that the separate existence of Leonard and Monsanto is illusory and that the entities are not dealing at arms-length, but are, in effect, abusing the corporate form, we ought not to disregard the corporate form. Van Dorn Co. v. Future Chem. and Oil Corp., 753 F.2d 565, 570 (7th Cir.1985). Nothing in the record suggests that Leonard and Monsanto have disregarded their separate corporate identities.[3]
 
 
 23
 Finally, the court in American Cast Iron was dealing with a policy excluding completed operations hazards and not, as here, with a policy specifically extending such coverage. Thus, the efforts of the court in interpreting the term "insured's premises" as broadly as possible can best be understood as an endeavor "to effectuate the predominate purpose of the contract which is to indemnify the insured." National Fidelity Life Ins. Co. v. Karaganis, 811 F.2d 357, 361 (7th Cir.1987) (citations and quotation marks omitted).
 
 
 24
 As to the award of damages, however, we disagree with the district court and conclude that it was error to enter final judgment. The court held that the plaintiffs waived any challenges to the alleged $903,000 in pre-existing losses by failing to contest this amount during briefing on summary judgment. But the plaintiffs sought summary judgment only with respect to the classification of the Care loss. In litigating that issue, the plaintiffs may not have challenged pre-existing losses, but this failure does not preclude them from contesting those alleged losses once their motion for summary judgment was denied. See Zook v. Brown, 748 F.2d 1161, 1166 (7th Cir.1984); Prepo Corp. v. Pressure Can Corp., 234 F.2d 700, 703 (7th Cir.1956) (concession with respect to specific motion no longer effective once motion overruled), cert. denied, 352 U.S. 892, 77 S.Ct. 132, 1 L.Ed.2d 87 (1956). Moreover, plaintiffs' Rule 12(n) statement of uncontested facts simply states that they do not contest the fact that Monsanto and Leonard have demanded reimbursement in the amount of $103,000 and that the plaintiffs have denied their request. The plaintiffs did not concede, however, that there were $903,000 in pre-existing completed operations losses and that Monsanto and Leonard are entitled to $103,000 if the Care loss is classified as a completed operations loss. It is true that a party not contesting an opponent's calculation of damages embodied in a motion for summary judgment cannot challenge the amount of damages if the motion is granted. See Publishers Resource, Inc. v. Walker-Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir.1985). But here the calculation and existence of pre-existing losses will not only determine the amount the plaintiffs owe on the policy, but will also control whether the plaintiffs are even liable under the agreement. We thus conclude that the award of final judgment was inappropriate.
 
 
 25
 Consequently, we affirm the district court's classification of the Care loss as a completed operations loss but reverse the final judgment and remand for further proceedings consistent with this opinion.
 
 
 26
 AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
 
 
 27
 RIPPLE, Circuit Judge, dissenting.
 
 
 28
 Although the question is admittedly a close one, I believe that a loss can be characterized as a "completed operations hazard" loss only if it occurs away from the premises owned by Monsanto or by one of its subsidiaries. The "named insured" is a single entity composed of Monsanto and its subsidiaries, and I believe that it is most reasonable to interpret that clause of the policy as defining the risk assumed by the carrier. In my view, the severability of interests clause does not change this result. By its very wording, it does not alter the limits of the carrier's liability.
 
 
 
 [1]
 At the outset, we note that the parties have been remiss in identifying the law to be applied in resolving this contractual dispute. Before the district court, the plaintiffs stated: "The primary INA policy is clear and unambiguous, and thus, black letter principles of contract interpretation apply and govern this Court's determination. Since the law of the potentially interested jurisdictions is not in conflict, no choice of law issue need be addressed." Mem. in Supp. of Pls.' Mot. for Summ. J. at 9 n. 5. Although we agree that general principles of contract and insurance law resolve this dispute, the choice of law question cannot be avoided. Because the parties agree that the policy was negotiated in Illinois and because both parties rely extensively on Illinois law in their briefs, we conclude that Illinois law governs the interpretation of the policy in question
 
 
 [2]
 This conclusion is buttressed by the language of INA's endorsements adding additional entities to the policy. For example, an endorsement adds plant physicians Dr. Hugh J. Bonner and Dr. Robert A. Cook as "additional named insureds," thus belying the plaintiffs' contention that there is only one named insured comprised of Monsanto and its subsidiaries. In addition, Section III.B.4 of the policy states that the policy, "if the named insured is a partnership, does not cover an automobile owned or registered in the name of a partner thereof." (Emphasis added). Yet Monsanto is not a partnership. The plaintiffs' Monsanto/subsidiary entity is not a partnership. And it would strain credulity to suggest that Monsanto or the Monsanto/subsidiary entity would ever become a partnership
 
 
 [3]
 Indeed, as the defendants note, the fact that Care could bring a suit against Leonard and was not prohibited from so doing under the workmen's compensation law evidences the separate corporate identities of the two entities