WYLIE ET AL., RESPONDENTS, *v.* WYLIE PERMANENT
CAMPING CO., APPELLANT.

(No. 4,047.)

(Submitted November 18, 1919.   Decided January 14, 1920.)

[187 Pac. 279.]

*Corporations—Stockholders—Sale of Stock—Goodwill.*

Goodwill—Nature of Property.
   1.  Goodwill is an incident to and inherent in the business to which it attaches.
Corporations—Goodwill—Nature of Property.
   2.  The goodwill of a corporation is an intangible asset dependent on the corporate existence; it constitutes an element of value in connection with, but not apart from, the corporation and its business.
Same—Goodwill—Interest of Stockholder.
   3.  *Semble:* It would seem that a stockholder has no interest in the goodwill of his corporation which he can sell.
Same—Goodwill—Effect of Sale of Stock.
   4.  *Held,* under the above rules, that by the sale of his stock in a corporation a stockholder transferred to the buyer whatever corporate goodwill he possessed; hence he was not in position to maintain an action for breach of a contract under which he was to receive $1,500 for the goodwill of the business.

*Appeal from District Court of Gallatin County; Ben B. Law, Judge.*

ACTION by William W. Wylie and another against the Wylie Permanent Camping Company.   Judgment for plaintiffs.   Defendants appeal from it and an order overruling their motion for new trial.   Reversal, with directions to dismiss the action.

*Messrs. Day & Mapes,* for Appellant, submitted a brief; *Mr. E. C. Day* argued the cause orally.

*Mr. Thomas H. McKee,* of the Bar of California, and *Mr. George Y. Patten* submitted a brief and argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

This action arises out of the following agreement: "The following agreement between W. W. Wylie and the Wylie Permanent Camping Company, successors to the Wylie Camping

Company, Witnesseth: That W. W. Wylie hereby agrees to transfer to the new company his entire goodwill of the business as formerly conducted by him and promises not to go into the Yellowstone Park in business for himself hereafter. He further agrees to assist the company as newly organized so long as the company's business is conducted after the same or like manner as he conducted it, or while maintaining the Wylie spirit. In consideration for such services or any further service for the good of the company not herein mentioned, said Wylie is to receive ($1,500) Fifteen Hundred Dollars per annum payable semi-annually from January 1st, 1906, as long as mutually agreeable to the parties hereto signing.

"Witness our signatures to the above agreement, made at Helena, Montana, this 28th day of December, 1905.

"W. W. WYLIE.

"WYLIE PERMANENT CAMPING COMPANY,
        "By A. L. SMITH, Secy."

The allegations of the complaint are: That William W. Wylie, from the year 1883 down to and including 1905, was engaged in conducting tourists' parties through the Yellowstone National Park by virtue of a license issued to him, from time to time, by the Interior Department of the federal government; that in the year 1896 he caused to be organized a corporation, named the Wylie Camping Company, sold to it all the equipment previously used by him in the conduct and maintenance of the business, and, during all of the years from 1896 to and including the year 1905, "remained in actual and personal management of the business," as he had prior to its organization; that later, in the summer of 1905, he sold and disposed of all of his shares of stock in that company to Harry W. Child, of Helena, and Arthur W. Miles, of Livingston; that thereafter a new corporation called the Wylie Permanent Camping Company was organized by Child and Miles, and all of its equipment was turned over to the new corporation; that defendant, in violation of its agreement, has failed and refused to pay plaintiff the installment of $750 due on July 1, 1908, and every other

installment due thereafter under its terms. The prayer is for judgment in the sum of $12,000, with interest at eight per cent per annum from the dates the several installments became due, and for costs.

The answer consists of general denials, and the affirmative allegation that the agreement in so far as it purported to be a sale of the goodwill of the business was without consideration and void. The new matter was denied by the replication, and upon the issues thus framed a trial was had with the aid of a jury and evidence adduced on behalf of plaintiffs.

W. W. Wylie was sworn on behalf of plaintiffs, his testimony tending to prove his conduct of the tourist and transportation business in the Yellowstone National Park from 1883 down to the time of the sale of his contract with the Wylie Camping Company and all his shares of stock in that company; he testified that he, together with his wife, attended to correspondence received by him from the time of the making of the contract as late as 1916; and encouraged tourists to go with the new corporation. He further states that he was not called upon to perform any services for the defendant after August, 1907, by any of its officers. He testified also that there was nothing said at the time of the sale of his contract and his stock in the old company concerning the transfer of his goodwill nor his license or "anything of the kind." He acknowledged receiving a letter of date August 29, 1907, from Mr. A. W. Miles, the president of the new company, in which it was stated that his services would no longer be needed, and inclosing check "for the months of July and August," and that on September 1, 1907, he replied thereto stating: "You will see by reading the contract for yearly salary that it was made for goodwill of business"; and protesting that he could "not be cut off in this abrupt manner."

At the close of plaintiff's testimony a motion for a nonsuit was overruled. The defendant refused to offer any testimony, contending that only questions of law were left for determination and that a verdict should be directed for either the plain-

tiffs or the defendant. In response to the court's direction, a verdict in the sum of $16,480 was returned by the jury, and judgment entered for that amount with interest. A motion for a new trial was overruled, and the case is here on appeal from the judgment and from the order denying defendant's motion for a new trial.

It is asserted by appellant that the contract is in violation of sections 5057 and 5058 of the Revised Codes and, therefore, void; that W. W. Wylie had no vendible interest to sell and hence that the instrument sued on was void for lack of consideration; that, being terminable at the will of either party, it was, by the letter of August 27, 1907, from the president of defendant corporation to W. W. Wylie, ended; that the action is barred by the statute of limitations, and that the evidence is insufficient to sustain the judgment.

In the determination of this appeal, our decision will be made to rest upon the principle that where a stockholder sells his stock, the goodwill of the business goes with it, leaving nothing tangible or of substance upon which to found another consideration touching any part of the same subject matter. If that be so, all the other questions of law and fact here presented are subordinate to, and controlled completely by, that issue.

It may be conceded, as respondent insists, that the goodwill of a business is the expectation of continued patronage (Rev. Codes, sec. 4566); is property subject to ownership and capable of being transferred (sec. 4567); and that one who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified territory, so long as the buyer, or any person deriving title to the goodwill from him, carries on a like business therein (sec. 5058); but still, the respondent, having theretofore at the same time and in the same transaction sold "the contract" as well as his "shares of stock in the old corporation," he separated himself from, and parted with, the goodwill and delivered himself of all he had to transfer. Goodwill is not a thing apart, but an incident to, and inherent in the thing itself—the business. That Mr. Wylie

had but one thought concerning the disposal of the goodwill is cleared of doubt by the statement in his letter of September 1, wherein he states: "You will see by reading the contract for yearly salary that it was made for goodwill of business"; and his oral testimony upon the trial, giving expression to the same thought in the following language: "I asked Mr. Child what he expected of me in the nature of duties. He said repeatedly, 'I expect no services from you; I do not care if you don't turn a hand over—if you and Mrs. Wylie would like to go up and ride around the Park once in a while, we would be glad to have you do it; but otherwise, all that we want is your goodwill and that you stay out of the business—' that is the object of this writing. At the close of the conversation I took my copy of the contract and left. * * * But my understanding all the time of the value they were getting was for me keeping out of the Park and for the goodwill and use they were making of my name. * * * Q. The services which you rendered in forwarding these letters to people telling or suggesting to them how they should go or how to arrange parties and things of that kind—those services were comparatively insignificant? A. Not insignificant, but not what I bring this suit for. Q. You don't mean to tell this jury that your services in forwarding letters and recommending people to visit Yellowstone Park, by the Wylie way, is worth $1,500 a year, do you? A. Hardly that."

This testimony plainly indicates that the sale of the goodwill alone was regarded by him as the essential element of the contract sued on.

" 'Goodwill' can only exist in connection with an existing [1, 2] and growing business, and, when applied to a corporation, is only an intangible asset dependent on the corporate existence and is appurtenant to the corporation as such, has no independent existence, and constitutes an element of value in connection with, but not apart from, the corporation and its business." (*In re Stevens,* 46 Misc. Rep. 623, 95 N. Y. Supp. 297, 313.)

In *Menendez* v. *Holt*, 128 U. S. 514, 521, 522, 32 L. Ed. 526, 9 Sup. Ct. Rep. 143, Mr. Chief Justice Fuller, speaking of the definition of "goodwill," has this to say: "Goodwill was defined by Lord Eldon, in *Cruttwell* v. *Lye*, 17 Ves. Jr. 335, 346, 34 Eng. Reprint, 129, to be 'nothing more than the probability that the old customers will resort to the old place'; but Vice-Chancellor Wood, in *Churton* v. *Douglas*, Johns. V. C. 174, 188, 70 Eng. Reprint, 385, 391, says it would be taking too narrow a view of what is there laid down by Lord Eldon to confine it to that; but that it must mean every positive advantage that has been acquired by the old firm in the progress of its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business. It may be that where a firm is dissolved and ceases to exist under the old name, each of the former partners would be allowed to obtain 'his share' in the goodwill, so far as that might consist in the use of trademarks, by continuing such use in the absence of stipulation to the contrary; but when a partner retires from a firm, assenting to or acquiescing in the retention by the other partners of possession of the old place of business and the future conduct of the business by them under the old name, the goodwill remains with the latter as of course."

In the later case of *Metropolitan Nat. Bank* v. *St. Louis Dispatch Co.*, 149 U. S. 436, 446, 37 L. Ed. 799, 13 Sup. Ct. Rep. 944, Chief Justice Fuller further says upon the same subject: "It is tangible only as an incident, as connected with a going concern or business having locality or name, and is not susceptible of being disposed of independently."

Mr. Lindley in his work on Partnership, Volume 2, page 439, says: "It is plain that goodwill has no meaning except in connection with a continuing business." (See, also, Story on Partnership, par. 99; Parsons on Partnership, 4th ed., sec. 181.)

The court of appeals of the District of Columbia, in *Mayer Fertilizer etc. Co.* v. *Virginia etc. Co.*, 35 App. Cas. (D. C.) 425, 426, in speaking on this same subject, states that: "Good-

will, like a trademark, is but an incident to, and can have no existence apart from, the business in which it had its origin. * * * In this case, the Southern Fertilizing Company wound up its affairs and abandoned its business. Necessarily, its goodwill became extinct. There was nothing tangible to which it might attach. What is included under the term 'goodwill' varies almost in every case, but it is a matter distinctly appreciable, which may be preserved (at least, to some extent) if the business be sold as a going concern, but which is wholly lost if the concern is wound up, its liabilities discharged and its assets got in and distributed. (*Wedderburn* v. *Wedderburn,* 22 Beav. 84, 52 Eng. Reprint, 1039.)''

The law, as laid down in 12 R. C. L., paragraph 9, page 985, is that ''Where a contract for the sale and transfer of a business omits to mention the goodwill, the presumption is that it was the intention of the parties that the goodwill should pass with the other assets. This necessarily results from the fact that the goodwill cannot exist except in connection with the business.'' (See, also, 20 Cyc. 1275–1282, title ''Goodwill''; Am. & Eng. Ency. of Law, title ''Goodwill,'' 1085–1092.)

It seems, too, to be the law, that a stockholder in a corporation has no interest in the goodwill of the corporation, [3] which he can sell. (12 R. C. L., p. 983.) This seems to be the holding of the supreme court of California, in *Merchants' Ad-Sign Co.* v. *Sterling,* 124 Cal. 429, 71 Am. St. Rep. 94, 46 L. R. A. 142, 57 Pac. 468; *Dodge Stationery Co.* v. *Dodge,* 145 Cal. 380, 78 Pac. 879, construing Code sections of that state identical with our sections 5057 and 5058, Revised Codes.

For these reasons, the conclusion must be that whatever of goodwill W. W. Wylie possessed was incidental to the corporate [4] business and accompanied the transfer to Messrs. Child and Miles of his contract with, and his stock in, the Wylie Camping Company. Upon this ground alone the action loses its foundation and must fail.

Counsel, however, insists that, having accepted the services of Mr. Wylie, appellant cannot now escape liability for the ser-

vices rendered. This contention sets at naught his positive declaration in the letter of September 1, 1907, addressed to Mr. Miles, that "the contract for yearly. salary was made for goodwill of the business," as well as his emphatic statement upon the witness-stand that the services rendered were *"not what I bring this suit for."* Whether his procrastination for a period of more than eight years in seeking redress is an additional reason why the judgment cannot stand need not now be determined.

The judgment of the district court, under a contract uncertain in terms and indefinite in duration, imposes upon appellant an obligation to pay respondent $1,500 per annum until such time as Mr. Wylie should consent to his own discharge. The imposition of that burden upon appellant, we are satisfied after a careful review of the whole case, was as far from the contemplation of the parties at the time of the making of the contract as it is without the purview of the law upon the subject.

The judgment and order are reversed, with directions to dismiss the action.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES HOLLOWAY, HURLY and MATTHEWS concur.

Rehearing denied March 3, 1920.