CLOONEY, APPELLEE, *v.* WCPO TELEVISION DIVISION OF
SCRIPPS-HOWARD BROADCASTING CO., APPELLANT.

[Cite as Clooney v. WCPO (1973), 35 Ohio App. 2d 124.]

(No. C-72257—Decided January 8, 1973.)

*Mr. Jerome J. Donnellon,* for appellee.

*Messrs. Baker, Hostetler & Patterson, Mr. Norman S. Jeavons* of counsel and *Messrs. Gorman, Davis, Hengelbrok & Price,* for appellant.

*Per Curiam.* This cause came on to be heard upon the appeal; the transcript of the docket and journal entries, original papers and pleadings from the Court of Common Pleas of Hamilton County: and the transcript of the proceedings, the assignments of error, the briefs, and the arguments of counsel.

Defendant, WCPO, the appellant herein, operates a television station with a transmitter and studio facilities in Cincinnati, Ohio, and broadcasts throughout an area including southwestern Ohio, southeastern Indiana and north-central Kentucky. Plaintiff, Nicholas Clooney, the appellee, is a broadcasting and television personality and performer who has been employed at a number of radio and television stations in various cities since 1953.

WCPO employed Clooney in the spring of 1969, the

written contract of employment providing, inter alia, that Clooney's "duties shall be * * * under the control and direction of WCPO * * *" and that "the services to be rendered by Clooney * * * are of a special, unique, unusual, extraordinary and artistic character which gives them a peculiar value, the loss of which cannot be reasonably and adequately compensated for in damages in an action at law * * *."

On June 2, 1969, Clooney, under the direction and supervision of WCPO, began to broadcast and participate in a program in which he was the star and host. The broadcasts, presented one hour a day five days a week, continued until the termination of Clooney's employment with WCPO. It is uncontroverted that to promote Clooney as a personality WCPO incurred substantial expenses and that he was publicized and developed as a special talent.

In accordance with renewal provisions therein, Clooney's contract was to continue through 1972. In early January, 1972, in accordance with the contract, WCPO decided to make changes in the format of the program in order to improve audience ratings and to effect economies. The parties discussed the proposed changes, which were to take place on January 31, 1972, and on January 10, 1972, Clooney agreed to the new format and to participate and star in the new show. WCPO proceeded to plan for and publicize the new program, expending funds for such planning and promotion.

The employment contract between WCPO and Clooney also provided that Clooney would not perform competitive services for one year after the termination of the agreement "for any radio or television station licensee whose broadcasting transmission facilities are located within one hundred (100) miles of Cincinnati, Ohio." However, it is admitted that during January, 1972, Clooney personally and through a representative met with officials of another Cincinnati television station to discuss the creation and performance of a show for that station.

On January 24, 1972, Clooney filed articles of incorporation to engage in "the creation, production and per-

formance of * * * all forms of theatrical and entertainment forms for use on radio and television * * *." On January 27, 1972, Clooney informed WCPO that he would not participate in the new show for WCPO, and it was agreed that Clooney would no longer perform for WCPO. Subsequently, in early February, 1972, WCPO learned that Clooney intended to join its competitor and advised Clooney that there had been no release from the provision of the contract relating to the performance of competitive services.

Clooney then filed his complaint in the court below seeking a declaratory judgment determining the status of the employment contract and a restraining order enjoining WCPO from interfering with any contractual negotiations of Clooney with any third parties The answer and counterclaim of WCPO sought to enforce the contract. Trial was had and the court concluded that the non-competition provision of the contract was "an interference with public interest, and undue hardship on Clooney and unenforceable" and entered judgment for Clooney. The appeal is from that judgment and the order overruling a motion for a new trial.

Defendant has assigned four errors. The first is that "the trial court erred in holding that the 100 mile territorial noncompetition provision in the contract between plaintiff and defendant is unreasonable and unenforceable." The second assignment is that "the trial court erred in failing to apply the doctrine of partial validity to the contract * * *." The third assignment is that "the judgment of the trial court is manifestly against the weight of the evidence." The fourth is that the court erred in overruling the motion for a new trial.

The Supreme Court of Ohio, in *Briggs* v. *Butler*, 140 Ohio St. 499, recognized the rule generally applied in determining the enforceability of restrictive covenants and established its compass in paragraph one of the syllabus as follows:

"A contract between an employer and employee whereby the latter agrees that subsequent to the termination of

such employment he will not engage in a competitive business within a reasonably limited time and space is valid and enforceable where the restraint is not beyond that reasonably necessary for the protection of the employer's business, is not unreasonably restrictive upon the rights of the employee and does not contravene public policy."

*Briggs, supra,* was decided December 16, 1942, and on July 1, 1964, its rationale was iterated in the case of *Extine* v. *Williamson Midwest, Inc.,* 176 Ohio St. 403, which effectively broadened the fundamental rule. Paragraph two of the syllabus in *Extine, supra,* states:

"An agreement in restraint of trade may be divisible, that is, subject to the application of the doctrine of partial validity, in which event any unreasonable limitation or restriction may be stricken from the contract, leaving the remainder thereof binding upon the parties."

Subordinate courts have applied these rules in a wide variety of cases, generally recognizing the necessity of protecting an employer where the services of an employee are distinct, or unique and of unusual value. The end sought is to prevent the value of such services from being used by a competitor of the employer within a reasonable geographical limit.

In the case at bar, it is uncontroverted that the services of the plaintiff were special, unique, unusual and of an extraordinary artistic character. Consequently, the employer is entitled to protection.

The question becomes one to be determined according to the directive of *Extine* v. *Williamson Midwest, Inc.,* *supra,* paragraph one of the syllabus, as follows:

"In determining the validity of a covenant or agreement in restraint of trade, each case must be decided on its own facts, and a reasonable balance must be maintained among the interests of employers, employees and the public."

Our examination of the record convinces us that the finding of the trial court is contrary to the manifest weight of the evidence. The evidence considered fairly in its entirety fails to establish that the restrictions were unrea-

sonable as to time and space, were unnecessary for the protection of the business of the employee, or unreasonably restricted the rights of the employee or contravened public policy. The restrictive covenants of the contract of employment are in harmony with the letter and spirit of the applicable decisions of the Supreme Court of this state and are, therefore, enforceable. At the very least, the court below should have enforced a restriction against competition by Clooney in WCPO's grade A coverage area by applying the rule of partial validity. To us, it is clear that the broadcasting-telecasting business is highly competitive, that Clooney had special talents of unique value to WCPO and, to insure against the loss of listeners and viewers, WCPO should have been protected not only in its grade A coverage area, that is, within a distance of 40-46 miles from Cincinnati, but also within the grade B and over-lapping competing coverage areas.

Therefore, we find that all four assignments of error are well taken.

Utilizing this court's plenary power, we will do what the court below should have done and declare that the one hundred mile territorial non-competition provision in the contract of employment is, upon the evidence adduced, reasonable and enforceable and that the restraint imposed is not beyond that necessary for the protection of the employer's business, does not unreasonably restrict the employee, and does not contravene public policy.

The judgment of the Court of Common Pleas of Hamilton County is reversed and final judgment is rendered hereby in favor of the defendant.

*Judgment reversed.*

HESS, P. J., SHANNON and YOUNG, JJ., concur.