This appeal arises from the denial of an injunction sought by Appellant, First Alabama Bancshares, Inc., to enforce an alleged covenant not to compete between itself and Appellee, Hayse McGahey, a past director, president and stockholder of the Citizens Bank of Guntersville. Citizens Bank, subsequent to the date the covenant was made, merged into the Bank of Guntersville, a wholly-owned subsidiary of Bancshares, created solely as a vehicle to acquire Citizens Bank.
The principle question raised concerns whether the exchange of stock involved in a merger constitutes a "sale" of good will within the meaning of Tit. 9, § 23, Code (§ 8-1-1, Code of Ala. 1975). If our answer to this question is in the affirmative, a covenant not to compete will be recognized under such circumstances. The trial Court, basing its interpretation upon federal taxing statutes, held that the merger could not be considered a "sale." We reverse and remand.
Title 9, § 23, provides that:
 One who sells the good will of a business may agree with the buyer . . . to refrain from carrying on or engaging in a similar business and from soliciting old customers . . . within a specified county, city, or part thereof, so long as the buyer or any person deriving title to the good will from him . . . carries on a like business therein.
We are called upon to interpret the language of this section which is an exception to the more general proposition contained in Tit. 9, § 22, Code, that contracts in restraint of trade are, to that extent, void. See also 54 Am.Jur.2d Monopolies, § 522.
Before we may reach this question, however, we must determine whether an individual stockholder has a vendible interest in the good will of a corporation. This appears to be a question of first impression in this jurisdiction. Therefore, and because a more complete understanding of the facts may prove enlightening, a brief recitation of the facts is appropriate.
By agreement dated December 29, 1972, McGahey, and other directors of Citizens Bank, agreed not to compete with Bancshares should a subsequent plan of merger between Citizens Bank and the Bank of Guntersville be approved. The two conditions upon which this agreement was based were that the plan had to be approved by the Internal Revenue Service as a tax-free exchange; and that all the terms of the "Plan of Reorganization," of which the covenant not to compete was a part, must be fulfilled. One additional clause of that plan was that the merger and exchange of stock would be effective only if 80% of Citizens Bank's common stockholders approved the merger offer. McGahey agreed not to "directly or indirectly enter the banking business in Guntersville, Alabama, for a period of five (5) years from the date on which the exchange [was] declared effective."
A second agreement, a "Plan of Merger," was executed by Citizens Bank, the Bank of Guntersville and Bancshares on November 13, 1973. On February 20, 85% of Citizens Bank's shareholders voted to ratify the Plan of Merger. (Thus, all requisites of the Plan of Reorganization were fulfilled because the IRS had previously approved the transaction as being tax-free.) The F.D.I.C. approved the merger, and, on April 1, 1974, the merger of Citizens Bank and the Bank of Guntersville became effective.
McGahey served as director and president of the successor bank for approximately one year after the merger, at which time he voluntarily resigned and became president of the Security Bank and Trust Company of Arab, Alabama. He continued at this position from April, 1975, until May, 1976.
In May, McGahey left Security Bank and re-entered the banking business in Guntersville by seeking to establish the Home Bank of Guntersville. It is this participation in the organization of Home Bank which led to the instant suit.
The rule in California, relied upon by McGahey, is that the good will of a corporation *Page 683 
is the property of that corporate entity, and can be transferred only by it. Dodge Stationery Co. v. Dodge, 145 Cal. 380,78 P. 879 (1904); and Merchants Ad-sign Co. v. Sterling,124 Cal. 429, 57 P. 468 (1899).
This proposition, however, overlooks the well-settled rule in Alabama that the stockholders of a corporation are the equitable owners of its assets. Williams v. North Ala. Express,263 Ala. 581, 83 So.2d 330 (1955). Therefore, because the good will of a corporation is a corporate asset, a stockholder is the equitable owner of that good will in the proportion that his shares bear to the total outstanding shares of stock in the corporation. Or, as specifically held in Wylie v. WyliePermanent Camping Co., 57 Mont. 115, 187 P. 279 (1920), "Good will is not a thing apart, but an incident to and inherent in the thing itself — the business."
The view we have taken is followed by other states which have considered this question. In Bessel v. Bethke, 56 N.D. 1,215 N.W. 868, 869 (1929), it was stated:
 "Where one sells his stock he necessarily disposes of his interest in the good will of the business conducted by the corporation to the same extent as he parts with his interest in any other property of the corporation."
See also Public Opinion Publishing Co. v. Ransom, 34 S.D. 381,148 N.W. 838 (1913); Buckhout v. Witwer, 157 Mich. 406,122 N.W. 184 (1909); and 54 Am.Jur.2d, Monopolies, § 526.
In Key v. Perkins, 173 Okla. 99, 46 P.2d 530, 532 (1935), statutes and facts were similar to the instant case. After examining the above-noted cases, as well as the California rule, the Court stated:
 "As we view it, the weight of authority and sound reasoning and logic support the contention that the owner of an appreciable interest in the stock and property and assets of a corporation has a proportionate interest in the good will of the business; and that on a sale thereof such owner is bound by a contemporaneous agreement, supported by an adequate consideration not to engage in a similar business within the territorial and time limits. . . ."
Therefore, we conclude that an individual stockholder may sell the good will of a corporation in proportion to his interest in that corporation.
Thus viewed, then, we must now determine whether, under the facts before us, there was a "sale" of good will pursuant to Tit. 9, § 23, Code. McGahey's contention that we must interpret "sale" as that term is used for federal tax purposes is without merit. Whether the transfer is taxable is immaterial to our consideration; and this for the reason that it is only the specific exclusionary provision which prevents this transfer from being taxable as a "sale or exchange." I.R.C., §§ 354, 368 (a), 1001 (c). While some gain may be realized, it is merely not recognized as a taxable incident by the terms of the federal revenue code.
McGahey's assertion that contracts in restraint of trade and employment are looked upon with disfavor is true. Tit. 9, § 22, Code; and Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953). This, however, does not compel the interpretation of the word "sale" to mean "cash sale." See Shelton v. Shelton, 238 Ala. 489,192 So. 55 (1939); and Davis v. Christopher, 219 Ala. 346,122 So. 406 (1929).
The intent of the Legislature in passing § 23 was to protect purchasers of a business from prior entrepreneurs where the good will of that business is one of the assets purchased.Shelton, supra. We perceive no set of circumstances more illustrative of the legislative purpose than the instant case. Here, a statewide corporation merged and acquired the assets of a local banking institution. The utmost trust and personal faith is required of a banker by his customers. Obviously, then, the good will of Citizens Bank was an important asset acquired by Bancshares; and, therefore, Bancshares had a legitimate interest in preventing McGahey, who had helped establish and nourish that good will, from competing locally with it. The term "sale," as included in Tit. 9, § 23, Code, must be interpreted *Page 684 
to include a transfer or acquisition. No less-expansive interpretation could foster the legislative intent. Indeed, because the Legislature, at the time of this statute's passage, could not foresee the complexities involved in today's corporate mergers, the generic interpretation is the only reasonable solution to this situation.
Finally, McGahey alleges that the covenant not to compete was executory and, therefore, unenforceable. This, however, is fallacious because the two agreements are separate contracts, each supported by adequate consideration. The fact that Bancshares would not have entered the merger agreement absent this covenant supplies sufficient consideration to support the obligation in that the promisee, McGahey, has suffered a legal detriment. See National City Bank of Mobile v. Barret, 217 Ala. 611,117 So. 55 (1928); Baumhauer v. McGill, 15 Ala. App. 433,73 So. 753 (1917); and Corbin, Contracts, §§ 121-23.
Therefore, the covenant not to compete is valid and enforceable within the limitations of Tit. 9, § 23, Code, and the injunction is due to be issued.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, SHORES, and BEATTY, JJ., concur.