I fully concur in the main opinion. I write specially to emphasize that we are not deciding in that opinion whether the noncompetition clause at issue in this case is overbroad, or, if it is, whether the trial court should narrow the clause or strike it down.
Without expressing a view on this noncompetition clause, I note that the geographic scope of a covenant not to compete is not necessarily overbroad simply because it is worldwide. A court should consider the entire restriction in light of the legitimate interest being protected. 2 Restatement (Second) of Contracts § 188, cmt. d (1981) ("What limits as to activity, geographical area, and time are appropriate in a particular case depends on all the circumstances.").
It is clear from our caselaw that, if a covenant not to compete is overbroad, it is within the power of the courts to narrow it.See Kershaw v. Knox Kershaw, Inc., 523 So.2d 351, 359 (Ala. 1988) ("This Court has previously held that when an agreement in restraint of trade contains unreasonable limitations, the court may strike the unreasonable restriction from the agreement, or the court can enforce the contract within its reasonable limits.") (citing Cullman Broad. Co. v. Bosley, 373 So.2d 830
(Ala. 1979), and Daughtry v. Capital Gas Co., 285 Ala. 89,229 So.2d 480 (1969)).
I believe, however, that there also are times when there is good reason to strike down such a clause. An unreasonably broad noncompetition clause deprives the former employee and his prospective employer of guidance as to what employment is permissible. Therefore, both the former employee and the prospective employer run the substantial risk of litigation if the former employee is hired. See Product Action Int'l, Inc. v.Mero, 277 F.Supp.2d 919, 930-31 (S.D.Ind. 2003) (stating that the practice of allowing a court to reform an overbroad noncompetition clause, instead of striking it down, deprives an employee and a prospective employer of guidance as to what is permissible: "A prospective new employer. . . . could not read the [clause] and know what sorts of activity would be prohibited and what would not. . . . A current employee may be frozen in his or her job by an unreasonably broad covenant. Even if the employee believes the covenant is too broad, she may be able to test that proposition only through expensive and risky litigation."). For this reason, some courts refuse to enforce any part of an overbroad noncompetition clause unless the entire clause is reasonable.
Corbin on Contracts describes the judicial options when a covenant not to compete is overbroad:
 "[Some] courts interpret or reform the restrictive promise, if possible, so as to make the extent and character of its operation reasonable. Some courts will refuse to enforce any part of the covenant if the covenant was not drafted in the good faith belief that it was valid. Some courts will refuse to enforce any part unless the whole is reasonable. These courts may refuse to partially enforce even when the contract specifically says that it should be partially enforced.
 "The approach of enforcing the restriction to the extent it is reasonable is the approach preferred by many modern courts and is in fact a superior approach. To refuse to enforce a covenant entirely, even for a minor deviation from the reasonableness standard, is too harsh a result, given the lack of precision of the reasonableness analysis and the recognized benefit of reasonably restrictive covenants. . . . Courts that have refused to reform covenants not drafted in the good faith belief that the restraint was *Page 174 
valid appropriately safeguarded the legitimate interests of the employee."
15 Arthur L. Corbin, Corbin on Contracts § 80.15, at 138-41 (Joseph M. Perillo ed., 2003) (footnote omitted).
The middle view, that a court should in general reform an overbroad noncompetition clause, but should refuse to do so when the clause demonstrably was not drafted in good faith, thus appears to offer a balanced response to the problem of overbreadth. The objection to the practice of partial enforcement is that it tends to encourage employers to insist upon unreasonable restrictions, secure in the knowledge that the promise will be upheld in part, if not in full. See 6 Richard A. Lord, Williston on Contracts § 13.22, at 813-14 (4th ed. 1990). However, this problem of intentional overbreadth is addressed by the adoption of the rule that a noncompetition clause, if it is deliberately unreasonable and oppressive, is stricken. Williston § 13.22, at 812-16. The Supreme Court of Alaska has described this approach as follows:
 "[I]f an overbroad covenant not to compete can be reasonably altered to render it enforceable, then the court shall do so unless it determines the covenant was not drafted in good faith. The burden of proving that the covenant was drafted in good faith is on the employer. This is the position taken in most United States jurisdictions and by the Restatement (Second) of Contracts § 184(2)."[1]
Data Mgmt., Inc. v. Greene, 757 P.2d 62, 64 (Alaska 1988) (footnotes omitted).
[1] 2 Restatement (Second) of Contracts § 184 (1981) states:
 "(1) If less than all of an agreement is unenforceable under the rule stated in § 178 [on public-policy grounds], a court may nevertheless enforce the rest of the agreement in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.
 "(2) A court may treat only part of a term as unenforceable under the rule stated in Subsection (1) if the party who seeks to enforce the term obtained it in good faith and in accordance with reasonable standards of fair dealing."
Thus, the Restatement (Second) of Contracts permits partial enforcement of the overbroad term so long as the party seeking enforcement obtained the term "in good faith and in accordance with reasonable standards of fair dealing." Williston § 13.22, at 813. "This test, or slightly less liberal variations, represents the weight of authority today. . . ." Williston at 813.